IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| EMERUS HOSPITAL PARNTERS, LLC and<br>EMERUS HOSPITAL, f/k/a 24 Hours Emergency<br>Hospital, | )<br>)<br>)<br>) | |
| Plaintiffs, | ) | No. 13 C 8906 |
| v. | )<br>) | Judge Robert W. Gettleman |
| HEALTH CARE SERVICE CORPORATION,<br>a Mutual Legal Reserve Company, and BLUE<br>CROSS AND BLUE SHIELD OF TEXAS, a<br>division of Health Care Service Corporation, a<br>Mutual Legal Reserve Company, | )<br>)<br>)<br>)<br>)<br>) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Emerus Hospital Partners, LLC, and Emerus Hospital f/k/a 24 Hours Emergency Hospital ("Emerus") sued defendants Health Care Service Corporation, a Mutual Legal Reserve Company, and Blue Cross Blue Shield of Texas, a Division of Health Care Service Corporation, a Mutual Legal Reserve Company (collectively, "HCSC"), in the Circuit Court of Cook County, Illinois, seeking damages Emerus incurred as a result of HCSC's alleged breach of statutory obligations. In its complaint, Emerus alleges that HCSC violated the Texas Prompt Pay Act ("TPPA"), Tex. Ins. Code. Ann. §§ 1301.101-1301.109, by failing to comply with the statutory provisions of the TPPA. HCSC timely removed the action to this court, pursuant to 28 U.S.C.A. § 1331, and the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C.A. § 1001 et seq., alleging that ERISA preempts any state law claims. Emerus has moved to remand the action to state court. For the reasons discussed below, the motion to remand is denied.

## BACKROUND

Emerus is a group of health care providers and physicians who provide emergency care services for emergency medical conditions to patients in Texas. HCSC is an insurer as defined under the TPPA.[1]

From November 1, 2009, to the present, Emerus provided emergency care to some patients insured by HCSC. A number of these patients were insured under an employee welfare benefit plan. At all times relevant to the allegations, Emerus was an out-of-network, or nonpreferred, provider with HCSC. During this time, Emerus submitted "clean" claims[2] for payment to HCSC, pursuant to the provisions of the TPPA, Tex. Ins. Code Ann. §§ 1301.102, 1301.131, for the emergency care provided to patients insured by HCSC. HCSC denied coverage for the claims submitted by Emerus on behalf of individuals covered by an ERISA regulated employee welfare benefit plan after HCSC determined that certain benefits were not available under the relevant ERISA plan.

HCSC argues that because some of the patients treated by Emerus were beneficiaries of a federally regulated employee benefit plan, the claims are preempted by ERISA, and that consequently this court has subject matter jurisdiction over Emerus' claims. Just prior to the commencement of this lawsuit, however, in June of 2013, Emerus executed written, irrevocable waivers of assignment, expressly waiving any and all assignment benefits and/or claims from all patients who received emergency care provided by Emerus. Consequently, Emerus claims that

---

[1]Under the TPPA, an insurer is a company "authorized to issue, deliver, or issue for delivery in [the State of Texas] health insurance policies." Tex. Ins. Code Ann. § 1301.001(5).

[2]A "clean claim" is a nonelectronic or electronic claim submitted by a physician, health care provider, or institutional provider to an insurer that complies with all the necessary elements as set forth in the TPPA, or otherwise agreed to by contract. Tex. Ins. Code Ann. § 1301.131.

this court lacks subject matter jurisdiction because any standing under ERISA, derivative or otherwise, has been waived. Accordingly, Emerus brought suit in state court under the TPPA, which provides a statutory claim for an out of network emergency care provider to receive payment, Tex. Ins. Code Ann. § 1301.069, "at the usual or customary rate or at a rate agreed to by the issuer and the nonpreferred provider" for the provision of emergency care services. Id. § 1301.0053.

## DISCUSSION

The "[p]urpose of ERISA is to provide a uniform regulatory regime over employee benefit plans[,]" thereby protecting the interests of participants and their beneficiaries. Aetna Health Inc. v. Davila, 542 U.S. 200, 208 (2004). Consequently, ERISA contains "expansive pre-emption provisions," ensuring that employee benefit plan regulation is "exclusively a federal concern." Id. (citing Alessi v. Raybestos–Manhattan, Inc., 451 U.S. 504, 523 (1981)). "[A]ny state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy" is therefore pre-empted. Id. at 209. Complete preemption "creates an exception to the ordinary application of the well-pleaded complaint rule," such that "[a]rtful pleading on the part of a plaintiff to disguise federal claims by cleverly dressing them in the clothing of state-law theories will not succeed in keeping the case in state court." Franciscan Skemp Healthcare, Inc. v. Central States Joint Bd. Health and Welfare Trust Fund ("Franciscan Skemp"), 538 F.3d 594, 596 (7th Cir. 2008).

In Davila, the Supreme Court established a two-part test for determining when ERISA completely pre-empts a state law cause of action. "If an individual, at some point in time, could have brought his claim under ERISA § 502(a)(1)(B)," and "where no other independent legal

3

duty is implicated by a defendant's actions, then the individual's cause of action is completely pre-empted by ERISA § 502(a)(1)(B)." Davila, 542 U.S. at 201.

Emerus argues that under the first prong of the Davila test, it could not have brought its claim under ERISA. Emerus alleges that it lacks standing, derivative or otherwise, to assert a claim under ERISA as a result of its written waivers of assignment that expressly waived any and all assignment of benefits and/or claims. As a result, Emerus contends that its claims are purely state law, statutorily-based claims based solely on the TPPA. In contrast, HCSC argues that Emerus, at some point in time, could have brought its claims under ERISA because Emerus is seeking benefits under an employee welfare benefit plan, and it had standing as a provider with an assignment of benefits for those claims.

Although standing under ERISA is generally limited to "a participant or beneficiary," 29 U.S.C. § 1132(a)(1), a medical care provider can enjoy derivative standing as an assignee of plan benefits. See Franciscan Skemp, 538 F.3d at 598 (holding that a healthcare provider that receives an assignment of benefits from a participant or beneficiary is effectually "standing in [the] shoes as a beneficiary seeking benefits"). "Healthcare providers may acquire derivative standing . . . by obtaining a written assignment from a 'beneficiary' or 'participant' of his right to payment of benefits under an ERISA-governed plan." Physicians Multispecialty Group v. Health Care Plan of Horton Homes, Inc., 371 F.3d 1291, 1294 (11th Cir. 2004). Thus, a "medical provider stand[ing] in the shoes of the ERISA beneficiary" must merely assert "a colorable claim for benefits[.]" Spring E.R., LLC v. Aetna Life Ins. Co., 2010 WL 598748, at *2 (S.D. Tex. Feb. 17, 2010). Moreover, "[t]he possibility of direct payment is enough to establish

4

subject-matter jurisdiction." Kennedy v. Connecticut General Life Ins. Co., 924 F.2d 698, 701 (7th Cir. 1991).

In Spring, the parties disputed whether the plaintiff, an emergency care facility, received an assignment of benefits under the relevant ERISA plan from plan members. The plaintiff argued that the patients it treated did not execute an assignment of benefits, nor was there a form available to execute such a waiver at any of the emergency care facilities. Id. The defendants, however, "produc[ed] printouts of records . . . reflecting claims for benefits submitted by Plaintiff." Id. The court, in finding a valid assignment of benefits, examined the documentation submitted to determine that the plaintiff "indicat[ed] to Defendants that it had received an assignment of benefits from patients for at least some of the claims involved." Id. Importantly, the court noted that it "is not clear, and Plaintiff does not adequately explain, why it would send claims to, and bring a case against, the insurer directly, rather than the patient, unless it had either negotiated a direct agreement with the insurance companies or filed the claims on behalf of the patients to whom the benefits are owed." Id. at *4.[3]

As in Spring, the parties in the instant case dispute the existence of an assignment. Emerus contends that its waivers of assignment preclude standing under ERISA. Nevertheless, from November 1, 2009, to the present, Emerus submitted "clean" claims pursuant to the TPPA directly to HCSC for prompt payment for the emergency care services that were provided by Emerus to patients insured by HCSC, some of whom were members of an employee welfare

---

[3]In Connecticut State Dental Ass'n v. Anthem Health Plans, Inc., 591 F.3d 1337, 1353 (11th Cir. 2009), the court similarly held that claim forms submitted by dentists to defendant "suffice to show an assignment of benefits" and confer ERISA standing, despite the plaintiff's insistence that it never actually obtained such assignments.

benefit plan. Emerus did not have a separate provider contract with HCSC specifying a contractual rate at which Emerus would bill HCSC. As such, prior to the execution of the written waivers, from November 1, 2009, to June 2013, Emerus held itself out to be an assignee of the beneficiaries, submitting requests for payment directly to HCSC. Consequently, during this time, Emerus could have brought its claim under ERISA § 502(a)(1)(B). See Davila, 542 U.S. at 210. HCSC thereafter denied, or deemed such claims not "payable" because benefits were not covered under the relevant ERISA plans. As a result of HCSC's failure to reimburse Emerus under the relevant ERISA plans, Emerus appears to have executed a retroactive waiver of assignment.[4]

Emerus' waivers of assignment are thus an attempt to artfully plead its complaint by disguising its federal claims. Franciscan Skemp, 538 F.3d at 596. Allowing a plaintiff "to hold itself out as an assignee of ERISA benefits such that it could receive direct payments from insurance companies, but escape ERISA entirely when attempting to collect these payments, simply by stating that it never actually received such assignments . . . [would] be illogical and run contrary to the interests of justice." Spring, 2010 WL 598748, at *6 n. 3. Therefore, Emerus' "state law civil complaint alleging a cause of action that falls within ERISA's enforcement provisions [converts] into 'one stating a federal claim for purposes of the well-

---

[4] From November 1, 2009, until the execution of a written waiver of assignment, Emerus could have brought its claim under ERISA § 502(a)(1)(B). Therefore, at some point in time, Emerus had standing under ERISA. The waiver of assignment executed by Emerus included in Plaintiffs' Motion to Remand indicates it was published and effective in June of 2013. Consequently, Emerus appears to have executed this waiver retroactively, waiving its assignment of benefits, and therefore standing, under ERISA from November 1, 2009, until the present.

pleaded complaint rule.'" Lone Star OB/GYN Associates v. Aetna Health Inc. ("Lone Star"), 579 F.3d 525, 529 (5th Cir. 2009) (citing Davila, 542 U.S. at 209).

Under the second prong of Davila, Emerus argues that its claims are predicated on a legal duty that is independent of ERISA. In Spring, the court categorized an independent legal duty as one that "require[s] no benefit determination under an ERISA plan" when the plaintiff is suing "under obligations independent of the plan and the plan member." Spring, 2010 WL 598748 at *5.[5] Emerus argues that its claims are predicated on the TPPA, a legal duty that is independent of ERISA. HCSC contends that the TPPA does not provide an independent legal duty, because Emerus is merely seeking the right of payment under the ERISA plan pursuant to § 502(a)(1)(B).

In Lone Star, 579 F.3d at 531, the court distinguished between "[a] claim that implicates the *rate* of payment. . . rather than the *right* to payment under the terms of the benefit plan," and concluded that a claim that merely implicates the rate of payment "does not run afoul of *Davila* and is not preempted by ERISA." Id. Nevertheless, a denial of payments submitted pursuant to the TPPA based on the lack of ERISA plan coverage would be preempted by ERISA. Id. at 532-33.

"The TPPA allows a physician or provider to collect the contracted rate plus penalties for 'payable' claims that are not paid within a statutorily specified amount of time." Id. at 532. The TPPA further provides that "the issuer of the plan shall reimburse the nonpreferred provider at the usual and customary rate or at a rate agreed to by the issuer and the nonpreferred provider for

---

[5]For example, in Franciscan Skemp, 538 F.3d at 598, the court held that the alleged misrepresentations by an employee benefit plan to a healthcare provider regarding plan coverage created an independent legal duty not within ERISA's scope.

7

the provision of the services." TEX. INS. CODE ANN. § 1301.0053. In seeking remedies under the TPPA, however, a plaintiff may not seek relief that "duplicates, supplements or supplants" the remedies provided by ERISA. Davila, 542 U.S. at 209. Therefore, a remedy under the TPPA "overlaps with the ERISA enforcement scheme if there is a dispute over whether a claim is 'payable'-whether there has been a denial of benefits because there is a lack of coverage." Lone Star, 579 F.3d at 532.

In the instant context, the parties dispute whether such claims are payable. Because Emerus does not have a contract with HCSC specifying an agreed upon rate between the parties, there is no dispute over "whether [the claims] were paid at the proper contractual rate" such that "ERISA preemption does not apply." Id. Rather, the parties dispute the *right* to payment, or whether such claims are payable, as evidenced by HCSC's denial of payments under the relevant ERISA plan. As such, the claim at issue does not involve duties completely independent of an ERISA plan.

The determination of whether the claims at issue in the instant case are payable under the relevant ERISA plan requires a closer examination of the plan itself. Accordingly, Emerus cannot avoid the "expansive preemptive provisions" of ERISA, Davila, 542 U.S. at 200, by disputing the rate rather than the right to payment, because its claims involve determinations under the relevant ERISA plan as to whether the claims were covered at all. See Lone Star, 579 F.3d at 532.

Therefore, Emerus has derivative standing under ERISA, and its claims are not predicated on a legal duty entirely independent of ERISA. Accordingly, Emerus' claims are completely preempted by ERISA.

## CONCLUSION

For the foregoing reasons, plaintiffs' motion to remand is denied. This matter is set for a report on status May 14, 2014, at 9:00 a.m.

**ENTER:** April 29, 2014

_____
**Robert W. Gettleman
United States District Judge**