IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| EMERUS HOSPITAL PARTNERS, LLC and EMERUS HOSPITAL, f/k/a 24 Hours Emergency Hospital, | ) ) ) ) |
| Plaintiffs, | ) No. 13 C 8906 |
| v. | ) ) Judge Robert W. Gettleman |
| HEALTH CARE SERVICE CORPORATION, a Mutual Legal Reserve Company, and BLUE CROSS AND BLUE SHIELD OF TEXAS, a division of Health Care Service Corporation, a Mutual Legal Reserve Company, | ) ) ) ) ) ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

Emerus Hospital Partners, LLC, and Emerus Hospital f/k/a 24 Hours Emergency Hospital ("plaintiffs") sued defendants Health Care Service Corporation, a Mutual Legal Reserve Company ("HCSC"), and Blue Cross Blue Shield of Texas, a Division of Health Care Service Corporation, a Mutual Legal Reserve Company ("defendant"),[1] in the Circuit Court of Cook County, Illinois, seeking damages plaintiffs incurred as a result of defendant's alleged breach of statutory obligations. In its complaint, plaintiffs allege that defendant violated the Texas Prompt Pay Act ("TPPA"), Tex. Ins. Code. Ann. §§ 1301.101-1301.202, 843.001- 843.464, by failing to comply with the statutory provisions of the TPPA. Defendant timely removed the action to this court, pursuant to 28 U.S.C.A. § 1331, and the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C.A. § 1001 et seq., alleging that ERISA preempts any state law claims.

---

[1]Defendant points out, and plaintiffs do not contradict, that Blue Cross Blue Shield of Texas is merely a division of HCSC, as reflected in the caption. Thus it appears that HCSC is the sole defendant in this case.

Defendant has moved to dismiss plaintiffs' complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted. For the reasons described below, defendant's motion is denied.

## BACKGROUND

Plaintiffs are a group of health care providers and physicians who provide emergency care services for emergency medical conditions to patients in Texas. Defendant is an insurer as defined under the TPPA.[2]

From November 1, 2009, to the present, plaintiffs provided emergency care to some patients insured by defendant. A number of these patients were insured under an employee welfare benefit plan. At all times relevant to the allegations, plaintiffs were out-of-network, or nonpreferred, providers with defendant. During this time, plaintiffs submitted "clean" claims[3] for payment to defendant, pursuant to the provisions of the TPPA, Tex. Ins. Code Ann. §§ 1301.102, 1301.131, for emergency care provided to patients insured by defendant. Defendant denied coverage for the claims submitted by plaintiffs on behalf of individuals covered by an ERISA-regulated employee welfare benefit plan after defendant determined that certain benefits were not available under the relevant ERISA plan.

Plaintiffs allege that defendant is required under the TPPA to pay plaintiffs for the clean claims submitted, as well as penalties, attorney's fees, and court costs. Specifically, plaintiffs

---

[2]Under the TPPA, an insurer is a company "authorized to issue, deliver, or issue for delivery in [the State of Texas] health insurance policies." Tex. Ins. Code Ann. § 1301.001(5).

[3]A "clean claim" is a nonelectronic or electronic claim submitted by a physician, health care provider, or institutional provider to an insurer that complies with all the necessary elements as set forth in the TPPA, or otherwise agreed to by contract. Tex. Ins. Code Ann. § 1301.131.

allege that: (1) defendant is required to pay plaintiffs 100 percent of the billed charges submitted by plaintiffs on its clean claims, pursuant to Tex. Ins. Code Ann. § 1301.137(a); (2) defendant is required to pay plaintiffs a penalty in the amount of the lesser of: 100 percent of the billed charges, as submitted by plaintiffs, or $200,000.00 per claim submitted, plus 18 percent annual interest on this amount per claim, pursuant to Tex. Ins. Code Ann. §1301.137(c); (3) defendant is required to pay plaintiffs 100 percent of the billed charges submitted by plaintiffs on its clean claims, pursuant to Tex. Ins. Code Ann. § 843.342(a); and (4) defendant is required to pay plaintiffs a penalty in the amount of the lesser of 100 percent of the billed charges, as submitted by plaintiffs, or $200,000.00 per claim submitted, plus 18 percent annual interest on this amount per claim, pursuant to Tex. Ins. Code Ann. § 843.342(c).

## **DISCUSSION**

In evaluating a motion to dismiss, the court accepts the complaint's well-pleaded factual allegations as true and draws all reasonable inferences in the plaintiff's favor. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555–56 (2007). A motion to dismiss for failure to state a claim tests the sufficiency of the complaint, not its merits. Gibson v. City of Chicago, 910 F.2d 1510, 1520 (7th Cir. 1990). To survive such a motion, the complaint must allege sufficient facts that, if true, would raise a right to relief above the speculative level, showing that the claim is plausible on its face. Twombly, 550 U.S. at 555. To be plausible on its face, the complaint must plead facts sufficient for the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

As a primary matter, the parties disagree as to whether plaintiffs' complaint states a claim for actual damages. Plaintiffs argue that the complaint asserts a claim for actual damages under

the TPPA and the TIC, namely "100 percent of the billed charges submitted by Plaintiffs on its clean claims[;]" and, alternatively, "[a]ctual damages in the amount of the difference between the actual amount paid, if any, and the total amount of each clean claim presented." Plaintiffs further argue that §1301.137 and § 843.342(a) of the TPPA authorize such payment.[4] Defendant argues that the only claims plaintiffs make in their complaint are for "prompt pay" penalties and attorneys' fees, and that there is no claim for actual damages.[5]

Section 1301.137 states that "if a clean claim submitted to an insurer is payable and the insurer does not determine . . . that the claim is payable and pay the claim on or before the date the insurer is required to make a determination or adjudication of the claim, the insurer shall pay the preferred provider making the claim the contracted rate owed on the claim plus a penalty. . . .." Section 843.342 states that "if a clean claim submitted to a health maintenance organization is payable and the health maintenance organization does not determine under this subchapter that the claim is payable and pay the claim on or before the date the health maintenance organization is required to make a determination or adjudication of the claim, the health maintenance organization shall pay the physician or provider making the claim the contracted rate owed on the claim plus a penalty . . .."

Defendant is correct that Section 1301.137 does not explicitly give non-preferred

---

[4]Chapter 843 of the Texas Insurance Code deals with Health Maintenance Organizations ("HMOs") and Chapter 1301 deals with Preferred Provider Organizations ("PPO"). The two chapters are collectively referred to as the TPPA.

[5]Defendant argues that "100 percent of the billed charges" and "actual damages in the amount of the difference between the actual amount paid, if any, and the total amount of each clean claim presented" are the same figure. Regardless, either amount is a claim for payment for services rendered, and therefore actual damages.

4

providers of emergency services a right to actual damages. Section 1301.137 allows "preferred providers" to receive "the contracted rate" plus penalties if a claim is payable. In the case of non-preferred providers, there is no "contracted rate" because the provider does not have a contract with the insurer.

Plaintiffs argue that Sections 1301.069 and 843.351 of the TPPA extend the protections of Sections 1301.137 and 843.342(a) to out-of-network providers. Section 1301.069 states that "[t]he provisions of this chapter relating to prompt payment by an insurer of a physician or health care provider and to verification of medical care or health care services apply to a physician or provider who" are not preferred providers and provide emergency care required by state or federal law to an insured. Section 843.351 states that "[t]he provisions of this subchapter relating to prompt payment by a health maintenance organization of a physician or provider and to verification of health care services apply to a physician or provider who" are out of network providers who provide emergency services. Plaintiffs assert that under the clear statutory language, the introductory phrase "the provisions of this [sub]chapter" means that the entirety of Chapters 1301 and 843 apply to out of network emergency care providers.

As defendant points out, the language of Sections1301.069 and 843.351 limit the extension of the Chapter to those provisions "relating to prompt payment by an insurer of a physician or health care provider and to verification of medical care or health care services." Plaintiffs' argument that the entirety of Chapters 1301and 843 apply is therefore incorrect. However, the sections of the TPPA that give emergency service providers the right to payment

5

for services rendered fall within the extension articulated in Section 1301.069 and 843.351.[6] The penalty provisions are related to the "prompt payment by an insurer of a physician or health care provider" and "prompt payment by a health maintenance organization of a physician or provider." Defendant argues that this language merely means that these providers are entitled to prompt payment under Sections 1301.103 and 843.338, but the language of the statute is broader. Sections 1301.069 and 843.351 speak of (plural) provisions relating to prompt payment. The right to payment for services rendered and authorized by statute is certainly related to the "prompt payment" by an insurer or HMO. A non-preferred provider may therefore seek payment under the TPPA and plaintiffs have adequately stated a claim for actual damages.

Defendant makes the same argument in support of their motion to dismiss the claims for penalties alleged in the complaint. Because 1301.137 and 843.342(a) explicitly award penalties only to "preferred providers," defendant argues that plaintiffs are not entitled to penalties. The penalty and fees provisions that plaintiffs seek to enforce, however, also fit within the extension articulated in Sections 1301.069 and 843.351. Because the penalty provisions are related to prompt payment of claims, the language of those sections permits out of network emergency care providers to seek penalties and fees for delayed payment.

Defendant points out that the "frequently asked questions" portion of the Texas Insurance Commissions' website[7] explicitly states that an out-of-network provider of emergency services

---

[6]Section 1301.155, which deals with emergency care, states that "[i]f an insured cannot reasonably reach a preferred provider, an insurer shall provide reimbursement for [certain] emergency care services at the preferred level of benefits until the insured can reasonably be expected to transfer to a preferred provider."

[7]See TDI Prompt Pay FAQs, found at http://www.tdi.texas.gov/hprovider/ ppsb418faq.html#toc32.

may not recover a penalty from an HMO or preferred provider carrier for late payment of a clean claim. Citing Mem. Hermann Hosp. v. Sebelius, 728 F.3d 400, 405 (5th Cir. 2013), defendant argues that this FAQ represents an agency interpretation and is therefore entitled to deference. Although "informal agency interpretations such as those contained in opinion letters ... policy statements, agency manuals, and enforcement guidelines . . . are entitled to respect," a website FAQ (with no attribution or date) cannot be compared to even these more informal agency position directives. Because there is no indication that this FAQ is a formal policy statement or interpretation by the Texas Department of Insurance, it is not entitled to any deference. See Tolar v. Allstate Texas Lloyd's Co., 772 F. Supp. 2d 825, 831 (N.D. Tex. 2011) (noting that an official bulletin from the Texas Department of Insurance stating the Department's position on a coverage issue may be accorded deference but is not binding and is simply an advisory opinion subject to judicial review). The plain terms of the TPPA indicate that non-preferred providers may seek penalties for late payment, and the unofficial website FAQ cannot supercede that conclusion.

Defendant further argues that if the penalty section did apply to non-preferred providers for emergency services, it would be reflected in the Texas Administrative Code ("TAC"), which sets forth the procedures necessary to implement the Insurance Code. This argument is unavailing; plaintiffs have alleged a violation of the TPPA, and the court interprets the statute to grant plaintiffs a right of action. The availability of a remedy under the administrative code does not invalidate the plain meaning of the statute.

The court therefore concludes that plaintiffs have adequately stated claims for violations of the TPPA, including claims for actual damages and penalties under the statute.

7

## **CONCLUSION**

For the reasons described above, the court denies defendant's motion to dismiss the complaint. Defendant is directed to answer the complaint on or before September 17, 2014. The parties are directed to file a Joint Status Report using this court's form on or before September 19, 2014, and appear for a status hearing September 24, 2014, at 9:00 a.m.

**ENTER:** **August 22, 2014**

_____
**Robert W. Gettleman**
**United States District Judge**