IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| EMERUS HOSPITAL, CR EMERGENCY ROOM, LLC, TOMBALL EXPRESS MEDICAL CENTER, LLC, SUGAR LAND 24 HOUR HOSPITAL, LLC, SAN FELIPE MEDICAL CENTER, LLC, CRAIG RANCH EMERGENCY HOSPITAL, LLC, TOMBALL EMERGENCY PHYSICIANS, PA, TOWN & COUNTRY EMERGENCY PHYSICIANS, PA, and CR EMERGENCY PHYSICIANS, PA, <br><br> Plaintiffs, <br> v. <br><br> HEALTH CARE SERVICE CORPORATION, a Mutual Legal Reserve Company, and BLUE CROSS BLUE SHIELD OF TEXAS, a division of Health Care Service Corporation, a Mutual Legal Reserve Company, <br><br> Defendants. | No. 13 C 8906 <br><br> Judge Robert W. Gettleman |

## MEMORANDUM OPINION AND ORDER

Plaintiffs filed a second amended complaint against defendants Health Care Service Corporation ("HCSC") and Blue Cross Blue Shield of Texas ("BCBSTX"),[1] alleging that defendants violated the Texas Prompt Pay Act ("TPPA"), §§ 1301.101-1301.202, 843.001-843.464.[2] Defendant has moved to dismiss plaintiffs' second amended complaint pursuant to

---

[1] As previously noted by the court, Emerus Hosp. Partners, LLC v. Health Care Serv. Corp., No. 13-C-8906, 2014 WL 4214260, at *1 n.1 (N.D. Ill. Aug. 22, 2014), and uncontradicted by plaintiffs, BCBSTX is a division of HCSC, and therefore HCSC is the only defendant in this case.

[2] Chapter 843 of the Texas Insurance Code regulates Health Maintenance Organizations ("HMOs") and Chapter 1301 regulates Preferred Provider Organizations ("PPO"). The two chapters are collectively referred to as the TPPA.

Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted. For the reasons discussed below, defendant's motion is granted in part and denied in part.

## BACKGROUND[3]

Plaintiffs are health care providers and physicians who provide emergency care services.[4] Defendant is an insurer as defined under the TPPA.[5] Plaintiffs allege that from November 8, 2009, to the present, they have provided emergency care to patients insured by defendant. At all times relevant to the allegations, plaintiffs were out-of-network, or nonpreferred, providers with defendant.

Plaintiffs allege that during the relevant time period "Emerus Hospital was the 'd/b/a' under which each of the LLC entities conducted business and submitted bills or 'claims' to Defendants." According to plaintiffs, Emerus Hospital and the LLC plaintiffs were licensed health care providers with National Provider Identifier ("NPI") numbers through which health care claims were submitted to defendant for payment. From November 8, 2009, through the present, the PA plaintiffs employed licensed emergency care physicians to work as independent contractors providing emergency care at the LLC entities. Plaintiffs allege that the physicians'

---

[3] The following facts are taken from plaintiffs' second amended complaint and are assumed to be true for purposes of this motion to dismiss. See Murphy v. Walker, 51 F.3d 714, 717 (7th Cir. 1995).

[4] The court will refer collectively to plaintiffs CR Emergency Room, LLC, Tomball Express Medical Center, LLC, Sugar Land 24 Hour Hospital, LLC, San Felipe Medical Center, LLC, and Craig Ranch Emergency Hospital, LLC as the "LLC plaintiffs." The court will refer collectively to plaintiffs Tomball Emergency Physicians, PA, Town & Country Emergency Physicians, PA, and CR Emergency Physicians, PA as the "PA plaintiffs."

[5] Under the TPPA, an insurer is a company "authorized to issue, deliver, or issue for delivery in [the State of Texas] health insurance policies." Tex. Ins. Code Ann. § 1301.001(5).

services were billed to defendant through the NPI numbers of the PA entities or their own NPI numbers.

Plaintiffs complain that in violation of the statutory provisions of the TPPA, defendant "improperly underpaid, late paid, or wholly failed to pay" clean claims[6] submitted for emergency care services provided to patients insured by defendant. As a result, plaintiffs allege that they suffered substantial damages. Plaintiffs seek to recover the full amount of the claims that defendant allegedly underpaid or denied, as well as penalties for late paid claims under the TPPA.

## DISCUSSION

**A.  Legal Standard**

When ruling on a motion to dismiss for failure to state a claim, the court accepts the complaint's well-pleaded factual allegations as true and draws all reasonable inferences in the plaintiff's favor. Sprint Spectrum L.P. v. City of Carmel, Indiana, 361 F.3d 998, 1001 (7th Cir. 2004). The pleading must describe the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds on which the claim rests. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). The allegations must plausibly suggest that the plaintiff has a right to relief, raising the possibility above the "speculative level." Id.

This standard demands that a complaint allege more than legal conclusions or "[t]hreadbare recitals of the elements of the cause of action, supported by mere conclusory statements." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when

---

[6] A "clean claim" is a nonelectronic or electronic claim submitted by a physician, health care provider, or institutional provider to an insurer that complies with all the necessary elements as set forth in the TPPA, or otherwise agreed to by contract. Tex. Ins. Code Ann. § 1301.131.

the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

**B.     Analysis**

Sections 1301.103 and 843.338 of the Texas Insurance Code require an insurer that has received a clean claim to make a determination within a specified amount of time (45 days for non-electronic claims and 30 days for electronic claims) as to whether the claim is payable. Within the specified time frame, the insurer "must either (1) pay the claim, (2) partially pay and partially deny the claim and notify the provider in writing of the reason for partial denial or (3) deny the claim in full and notify the provider in writing of the reason for denial." Health Care Serv. Corp. v. Methodist Hosp. of Dallas, No. 15-10154, 2016 WL 530680, at *1 (5th Cir. Feb. 10, 2016). If an insurer fails to comply with these requirements, the statute, pursuant to §§ 1301.137 and 843.342, "imposes a range of penalties for late payments of claims determined to be payable." Id. Although the statute does not explicitly give out-of-network providers, like plaintiffs, the right to actual damages, this court previously found that pursuant to §§ 1301.069 and 843.351 "a non-preferred provider may . . . seek payment under the TPPA and [that] plaintiffs have adequately stated a claim for actual damages." Emerus Hosp., 2014 WL 4214260 at *3. The court also held that §§ 1301.069 and 843.351 permit "out of network emergency care providers to seek penalties and fees for delayed payment." Id.

Defendant argues that plaintiffs' second amended complaint should be dismissed because: (1) prompt pay penalties under the TPPA are not available for claims that were denied; (2) the PA plaintiffs are not eligible to claim prompt pay penalties under the TPPA because they are not required to provide emergency services by state or federal law; (3) the PA plaintiffs'

claims that arose prior to October 30, 2011, are time-barred because they do not relate back to the filing of the original complaint; (4) claims asserted by plaintiffs CR Emergency Room, LLC, San Felipe Medical Center, LLC, and Craig Ranch Emergency Hospital, LLC that arose prior to October 30, 2011, are time-barred because they do not relate back to the filing of the original complaint; (5) plaintiffs' underpay and denied claims are time barred because they do not relate back to the original complaint; (6) the TPPA does not provide for penalties to out-of-network providers; and (7) plaintiffs have failed to identify the individual health care claims that are at issue in this case.

### 1. Prompt Pay Penalties for Denied Claims

Defendant first argues that plaintiffs' claims related to health care claims that were denied in whole or in part should be dismissed because penalties are not available pursuant to the TPPA for denied claims. According to defendant, "[t]he prompt pay statutes provide for penalties only where an insurer determines a claim is 'payable,' but then underpays or pays late." Defendant contends that there is no TPPA provision "that entitles Plaintiffs to obtain penalties where HCSC has determined that a claim is not 'payable' and thus denies the claim." The court disagrees.

Contrary to defendant's assertion, penalties under the TPPA are not contingent on the *insurer* having determined that the claim was "payable." Instead, § 1301.137 provides for penalties when "a clean claim submitted to an insurer *is payable* and the insurer does not determine . . . that the claim is payable and pay the claim on or before the date the insurer is required to make a determination or adjudication of the claim." (Emphasis added). Similarly, § 843.342 states that penalties are available when "a clean claim submitted to a health

maintenance organization *is payable* and the health maintenance organization does not determine under this subchapter that the claim is payable and pay the claim on or before the date the health maintenance organization is required to make a determination or adjudication of the claim." (Emphasis added). Although penalties under §§ 1301.137 and 843.342 are contingent on the claim being payable, it is not the insurer's determination of whether a claim is payable that is controlling.

The fact that the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq., preempts certain TPPA claims is indicative of this principle. As the Fifth Circuit acknowledged in Lone Star, "[a] TPPA remedy only overlaps with the ERISA enforcement scheme if there is a dispute over whether a claim is 'payable'—whether there has been a denial of benefits because there is a lack of coverage. Again, where claims do not involve coverage determinations, but have already been deemed 'payable,' and the only remaining issue is whether they were paid at the proper contractual rate, ERISA preemption does not apply." Lone Star OB/GYN Assoc. v. Aetna Health Inc., 579 F.3d 525, 532 (5th Cir. 2009). Thus, whether a claim is "payable," can be a contested issue in which the insurer's determination is not controlling. See Emerus Hosp. Partners, LLC v. Health Care Serv. Corp., 41 F. Supp. 3d 695, 700 (N.D. Ill. 2014) (holding that because "the parties dispute the *right* to payment, or whether such claims are payable," plaintiffs' "claims are completely preempted by ERISA.") (emphasis included).

Defendant's reliance on the Fifth Circuit's recent decision in Methodist Hosp. in support of its argument that plaintiffs cannot seek prompt pay penalties for denied claims is misplaced. In Methodist Hosp., the Fifth Circuit addressed whether the TPPA applied to the plaintiff's

6

administration of certain plans and whether the Federal Employees Health Benefits Program preempted application of the TPPA. 2016 WL 530680. As a part of its brief summary of the TPPA, the court noted that § 1301.137(a) "does not provide any recourse for coverage determinations that occur after the 30– or 45– day deadlines but result in a determination that the claim is not payable. Accordingly, the statute imposes penalties only for late payment of approved claims." Id. at *1 n.4.

Defendant argues that this footnote establishes that "Plaintiffs cannot seek prompt pay penalties under Chapter 1301 of the Texas Insurance Code for healthcare claims that HCSC denied because Chapter 1301 only provides for penalties for healthcare claims HCSC determined were 'payable' claims, and a denied claim is not 'payable.'" However, as discussed above, it is not the insurer's determination of whether a claim is payable that is dispositive of whether TPPA penalties are applicable. Nor does Methodist Hosp.'s discussion of § 1301 hold that TPPA penalties are not available for unpaid claims. The Fifth Circuit merely acknowledged the settled principle that a claim must be "payable" for TPPA penalties to apply. Where an insurer fails to make a coverage determination within the statutory time frame but the claim is later determined to be not payable, the TPPA does not provide a remedy. This does not mean, however, that plaintiffs cannot seek penalties for claims that were deemed not payable by defendant, and thus not paid within the required time period, but are later determined to be payable. As recognized by the Fifth Circuit in Lone Star, plaintiffs are not precluded from challenging defendant's determination that a claim was not payable. See 579 F.3d at 532.

2. **PA Plaintiffs' Eligibility for TPPA Relief**

Defendant contends that the PA plaintiffs' claims should be dismissed because physician groups are not required by state or federal law to provide emergency care. Sections 1301.069 and 843.351 provide that the provisions of the TPPA "relating to prompt payment by an insurer [or a health maintenance organization] of a physician or health care provider . . . apply to a physician or provider who . . . provides to an insured [or enrollee] . . . care related to an emergency or its attendant episode of care as required by state or federal law." Plaintiffs argue that both federal and state law require physician groups to provide emergency medical care, thereby allowing such groups to recover under the TPPA.

Plaintiffs argue that § 311.022 of the Texas Health and Safety Code, which provides that a "medical staff member of a general hospital may not deny emergency services because a person cannot establish the person's ability to pay for the services," mandates that physician groups provide emergency care. According to plaintiffs, although "medical staff member" is not defined in § 311.022, § 241.003 of the Texas Health and Safety Code defines the term as meaning "a physician or group of physicians." Plaintiffs contend that because the PA plaintiffs are groups of physicians who provided emergency care at the LLC plaintiff hospitals, the PA plaintiffs were required pursuant to § 311.022 to provide emergency care to patients insured by defendant. Plaintiffs also point to Texas's tort laws, arguing that "both professional associations, and the emergency medicine physicians working for them, owe a legal duty to patients being provided with emergency care services to provide such care with: (1) reasonable, ordinary prudence; and, (2) without 'willful or wanton negligence.'"

The court is not persuaded by either of these arguments. As defendant points out, "medical staff member" is not defined in § 311.022 of the Texas Health and Safety Code.

8

Although § 241.003(8) defines "medical staff" as including a physician or group of physicians, this definition is limited to § 241, which addresses hospital licensing, not § 311, which dictates the powers and duties of hospitals. Tex. Health & Safety Code Ann. § 241.003(8) ("*In this chapter* . . . 'Medical staff' means . . . .") (emphasis added). Plaintiffs' reliance on Texas tort law is equally misplaced, because a physician's or physician group's obligation to provide care, once it is undertaken, with reasonable prudence is not equivalent to a state law mandating that care be provided.

Plaintiffs also contend that federal law, specifically the Emergency Medical Treatment and Active Labor Act, 42 U.S.C. § 1395dd ("EMTALA"), mandates that the PA plaintiffs provide emergency medical care. Plaintiffs argue that § 1395dd of EMALTA requires both hospitals and physicians to provide medical screening and stabilization prior to a patient being transferred. Because the PA plaintiffs are under contract to provide emergency medical care to patients at the LLC plaintiff hospitals, plaintiffs contend that the PA plaintiffs, along with the physicians they employ, are required to comply with EMTALA. According to plaintiffs, if a physician employed by a PA plaintiff violated EMTALA, the physician and the PA plaintiff would be subject to penalties under the statute. Plaintiffs appear to argue that because the PA plaintiffs can act only through their physicians, the PA plaintiffs are bound to EMTALA's provisions to the same extent as the individual physicians they employ.

EMTALA, however, primarily imposes requirements on hospitals, not physicians or physician groups. Pursuant to § 1395dd (a) and (b), a participating hospital with an emergency department must provide appropriate medical screening and stabilization. EMTALA was enacted by Congress in 1986 to prevent hospitals from "dumping" patients unable to pay for

9

emergency care.  See Brooks v. Maryland General Hosp., Inc., 996 F.2d 708, 710 (4th

Cir. 1993).  Thus, private causes of action under EMTALA are limited to suits against hospitals.

See e.g., Gerber v. Northwest Hosp. Ctr., Inc., 943 F. Supp. 571, 575 (D. Md. 1996); Brooks,

996 F.2d at 710 n.2.  While § 1395dd(d)(1)(B) imposes civil monetary penalties on a physician

"who is responsible for the examination, treatment, or transfer of an individual in a participating

hospital . . . and negligently violates a requirement of" § 1395dd, the statute does not impose

such penalties on physician groups.  Section 1395x(r), which defines physician, does not include

a group of physicians as a part of its definition.  Consequently, plaintiffs have failed to identify

any state or federal law that requires the PA plaintiffs to provide emergency medical care, and

the PA plaintiffs' TPPA claims are dismissed.

   **3.**  **Relation Back of PA Plaintiffs' Claims**

Because the court has found that the PA plaintiffs cannot pursue their TPPA claims, the

court need not address defendant's argument that their claims prior to October 30, 2011, are

untimely.

   **4.**  **Relation Back of CR Emergency Room, LLC, San Felipe Medical Center, LLC, and Craig Ranch Emergency Hospital, LLC**

Defendant argues that plaintiff CR Emergency Room, LLC's, San Felipe Medical

Center, LLC's, and Craig Ranch Emergency Hospital, LLC's (the "new LLC plaintiffs") claims

arising prior to October 30, 2011, should be dismissed as untimely.  The original complaint in

this lawsuit was filed on November 8, 2013, in which the plaintiffs were identified as Emerus

Hospital Partners, LLC and Emerus Hospital f/k/a 24 Hours Emergency Hospital.  The second

amended complaint presently before the court, adding the new LLC plaintiffs, was filed on

October 30, 2015.  The parties agree that plaintiffs' prompt pay claims are subject to a four-year

statute of limitations. Accordingly, if the newly added LLC plaintiffs' claims do not relate back to the filing of the original complaint, any claims based on alleged TPPA violations that occurred prior to October 30, 2011, are time-barred.

Defendant contends that the newly named LLC plaintiffs are "legally distinct corporate entities who were not identified as having anything to do with this case until" January 2015. According to defendant, the new LLC plaintiffs' claims do not relate back to the original complaint because they are not a part of the same transactions or occurrences initially alleged. Defendant further complains that it had no notice of the new LLC plaintiffs' claims until 2015, and therefore will suffer prejudice if the otherwise time-barred claims are not dismissed.

Fed. R. Civ. P. 15(c) governs when an amended complaint relates back to the original pleading. Pursuant to Rule 15(c)(1) "[a]n amendment to a pleading relates back to the date of the original pleading when: (A) the law that provides the applicable statute of limitations allows relation back; [or] (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading." Where a plaintiff wishes to add a new defendant or alter the name of an existing defendant, Rule 15(c)(1)(C) requires that: (1) subsection B of Rule 15(c)(1) is satisfied; (2) the new defendant received timely notice of the claims in the original pleading, so that it would not be prejudiced in maintaining a defense; and (3) the new defendant knew or should have known that it would have been named in the original pleading but for a mistake concerning the identity of the proper party.

Under Texas law, "[o]rdinarily, an amended pleading adding a new party does not relate back to the original pleading." Alexander v. Turtur & Assoc., Inc., 146 S.W.3d 113, 121

(Tx. 2004) (holding that newly added plaintiff's claim did not relate back to original complaint). Accordingly, subsection A of Rule 15(c)(1) is not satisfied and the court must return to federal law to determine whether the new LLC plaintiffs' claims relate back. Fed. R. Civ. P. 15 Advisory Comm. Notes to 1991 Amendment. Although the addition of a new plaintiff is not expressly considered by Rule 15, the Rule's 1966 Advisory Committee Notes indicate that the omission was purposeful because "[t]he relation back of amendments changing plaintiffs . . . is generally easier." According to the Advisory Committee Notes, when applying Rule 15(c) to the addition of new plaintiffs, "the chief consideration of policy is that of the statute of limitations, and the attitude taken in revised Rule 15(c) toward change of defendants extends by analogy to amendments changing plaintiffs."

As such, where an amended complaint seeks to add a new plaintiff courts in this district have applied a similar inquiry to subsection C of Rule 15(c)(1). In determining whether the addition of a new plaintiff relates back to the original complaint, courts consider "whether or not (1) the new plaintiff's claim arose out of the 'same conduct, transaction or occurrence' set forth in the original complaint; (2) the new plaintiff shares an 'identity of interest' with the original plaintiff; (3) the defendants have 'fair notice' of the new plaintiff's claim; and (4) the addition of the new plaintiff causes the defendants prejudice." Olech v. Vill. of Willowbrook, 138 F. Supp. 2d 1036, 1044 (N.D. Ill. 2000); see also Staren v. Am. Nat. Bank & Trust Co. of Chicago, 529 F.2d 1257, 1263-64 (7th Cir. 1976). The "central underlying question which a court must decide when determining whether a claim asserted by a new plaintiff shall relate back to the time of the original plaintiff's claim is whether the defendant had such notice of the added claim at the time the action was commenced that relation back of the added claim will not cause

12

defendant undue prejudice." Olech, 138 F. Supp. 2d at 1042 (internal quotations omitted); see also Robbins v. Lading, No. 10-CV-605, 2012 WL 2906247, at *3 (S.D. Ill. July 16, 2012).

In support of their position that the new LLC plaintiffs' claims relate back to the original complaint, plaintiffs ask the court to consider deposition testimony from a Blue Cross Blue Shield of Texas corporate representative and claims Emerus Hospital made to the Texas Department of Insurance in an attempt to collect unpaid and underpaid emergency care claims from defendant. These materials, however, are outside of the pleadings, and therefore not properly considered as a part of defendant's Rule 12(b)(6) motion. See Fed. R. Civ. P. 12(d); see also Fleece v. Volvo Const. Equip. Korea, Ltd., No. 10-CV-4496, 2012 WL 171329, at *3 (N.D. Ill. Jan. 20, 2012) (declining to review materials outside of the pleadings in determining whether the plaintiff's claim related back to filing of original complaint).

Nonetheless, the court finds that the new LLC plaintiffs' claims relate back to the original pleading. In the original complaint, plaintiffs were described as "health care providers licensed by the State of Texas that provide emergency care to patients in multiple locations in Texas, including Sugar Land, Texas, Tomball, Texas, McKinney, Texas and Austin-Cedar Park, Texas." Plaintiffs alleged in the original complaint that from November 1, 2009, to present, they provided, as out-of-network providers, emergency care to patients who received their health insurance through defendant. The original complaint further alleged that plaintiffs submitted clean claims to defendant for the emergency care services they provided to defendant's insured, but that defendant, in violation of the TPPA, did not: (1) determine that the claims were payable at the rate set forth by plaintiffs; (2) pay the claims according to the rate set forth by plaintiffs; or

13

(3) promptly pay plaintiffs' claims. As a result of these alleged statutory violations, the original complaint asserted that plaintiffs suffered actual damages.

The newly added LLC plaintiffs seek to recover under the TPPA based on the exact same claims asserted in the original complaint. Specifically, according to the second amended complaint, the new LLC plaintiffs are licensed, Texas health care providers, that "provide (and have provided) emergency care services to Defendants' insureds." The second amended complaint alleges that from November 8, 2009, to the present, plaintiffs, including the new LLC plaintiffs, submitted clean claims to defendant for emergency care services provided to individuals insured by defendant. Plaintiffs, including the new LLC plaintiffs, allege that despite the timely submission of these clean claims, defendant, in violation of the TPPA, did not: (1) determine that the claims were payable at the rate set forth by plaintiffs; (2) pay the claims according to the rate set forth by plaintiffs; or (3) timely pay plaintiffs' claims. The second amended complaint alleges that as a result of defendant underpaying, not paying, or paying late the clean claims, plaintiffs suffered actual damages.

The claims asserted in the original complaint are nearly identical to the claims now set forth in the second amended complaint by the new LLC plaintiffs. In the original complaint, Emerus Hospital sought to recover TPPA penalties associated with health care claims generated by the treatment of defendant's insured at its emergency care facilities, which included health care claims arising from the treatment of defendant's insured at the new LLC plaintiff facilities. Defendant itself complained in its second motion (doc. 152) to dismiss the original complaint that Emerus Hospital did not have standing to assert claims on behalf of its various health care facilities, which include the new LLC plaintiffs. Naming these entities in the second amended

14

complaint, therefore, is "merely formal and in no way alters the known facts and issues on which the action is based." Staren, 529 F.2d at 1263 (reversing district court order denying the plaintiffs the right to file an amended complaint substituting the name of the plaintiff to the entity that actually purchased the securities at issue). Consequently, there is no question that the new LLC plaintiffs' claims arose out of the same conduct, transaction or occurrence set out – or attempted to be set out – in the original pleading. Fed. R. Civ. P. 15(c)(1)(B).

Likewise, because Emerus Hospital was the d/b/a through which the new LLC plaintiffs were submitting at least some of their claims, there is an identity of interest between at least one of the original plaintiffs, Emerus Hospital, and the new LLC plaintiffs. See Robbins, 2012 WL 2906247 at *4 ("Parties share an identity of interest when there is a relationship so close that a court can conclude that a defendant had notice of a new party's potential claims and thus would not suffer any prejudice by the party's addition.") (internal quotations omitted).

It is also clear that defendant had notice of the new LLC plaintiffs' claims. Although the original complaint did not include the locations of the new LLC plaintiff facilities, the original complaint put defendant on notice that Emerus Hospital, which provided emergency care at numerous locations in Texas,[7] was seeking TPPA penalties associated with clean claims that were generated from treating individuals insured by defendants. See, e.g., Paskuly v. Marshall Field & Co., 646 F.2d 1210, 1211 (7th Cir. 1981) ("the original complaint alleged that defendant engaged in practices that discriminated against women because of their sex; the defendant was

---

[7] Defendant incorrectly argues that the original complaint limited the Emerus facilities at issue to "Sugar Land, Texas, Tomball, Texas, McKinney, Texas, and Austin-Cedar Park, Texas." The original pleading merely stated that plaintiffs "provided emergency care to patients in multiple locations in Texas, *including*" the above locations. (Emphasis added.)

thereby on notice that it might be required to defend its employment practices from charges of class-based discrimination."). As such, the new LLC plaintiffs' claims do not alter the facts and issues raised in the original complaint. The second amended complaint, in fact, merely adds additional detail– specifically, which Emerus entities/facilities submitted the claims at issue – to the facts alleged in the original complaint.

"The addition of a new party plaintiff can cause undue prejudice if relevant evidence has been lost or compromised due to the passage of time, or where the proposed amendment does not afford defendant adequate time for a meaningful defense." Robbins, 2012 WL 2906247 at *4. Defendant has not alleged any such prejudice here. Likewise, the addition of the new LLC plaintiffs' claims does not increase defendant's potential liability in the case, because their claims were technically encompassed, or attempted to be encompassed, in the original complaint. As a result, the addition of the new LLC plaintiffs does not cause defendant undue prejudice, and their claims relate back to the original complaint.

     **5.**     **Relation Back of Underpaid and Denied Claims**

Defendant next argues that plaintiffs' claims related to underpaid and denied health care claims should be denied as untimely. According to defendant, "the original complaint sought penalties relating only to allegedly late-paid claims." Defendant contends that plaintiffs' claims for denied and underpaid health care claims do not relate back to the filing of the original complaint. The court disagrees.

It is beyond question that the original complaint sought relief under the TPPA for health care claims that defendant allegedly underpaid and/or denied. Under section VI of the original complaint, entitled Texas Prompt Pay Claims, paragraph 29 states that "Plaintiffs' claims are

based exclusively on the *rate of payment* owed to Plaintiffs for the unpaid clean claims submitted to Defendants for the provision of emergency care services, as these rates are determined according to the provisions of the Texas Prompt Pay Act." (Emphasis added). Paragraph 31 states that "[u]nder Texas law, Defendants were required to pay Plaintiffs for the clean claims (*at the specified rate billed to Defendants by Plaintiffs*) that were properly and timely submitted to Defendants within the statutorily prescribed deadlines." (Emphasis added). Paragraph 32, likewise states that "despite the timely and proper submission of clean claims from November 1, 2009 to the present, Defendants did not: (1) determine that the clean claims submitted by Plaintiffs *were payable at the rate of payment* set forth by Plaintiffs, and (2) *did not pay the billed charges* submitted by Plaintiffs according to the rate of payment set forth in the clean claims forms submitted by Plaintiffs, as required under Texas law." (Emphasis added). The original complaint further alleges that "based on the conduct described above . . . *Defendants are required to pay Plaintiffs 100 percent of the billed charges* submitted by Plaintiffs on its clean claims" pursuant to §§ 1301.137(a) and 843.342(a) of the Texas Insurance Code. (Emphasis added). In light of these allegations, which clearly establish that plaintiffs sought relief related to denied and underpaid health care claims, defendant's arguments to the contrary are meritless.

Defendant's position boarders on disingenuous in light of the other motion practice in this case. Specifically, in seeking to remove the case from state court defendant argued that "included among [plaintiffs'] claims are [health care] claims that were denied and/or no benefits were paid, confirming that *the dispute, at least in part, is over whether the claims are payable*." Doc. 1., ¶ 5 (emphasis added). Defendant contended that as a part of the claims in the original

17

complaint, "Plaintiffs are actually seeking the *right* to benefits." Id. at ¶ 7 (emphasis in original). As evidenced by these arguments, defendant has been on notice since the original pleading that this case involved allegations of unpaid and underpaid (as well as late paid) health care claims.

### 6. TPPA Penalties for Out-of-Network Providers

Despite this court's prior holding, defendant once again argues that plaintiffs, as out-of-network providers, cannot seek penalties under the TPPA. In ruling on defendant's first motion (doc. 9) to dismiss for failure to state a claim, the court held that "[t]he plain terms of the TPPA indicate that non-preferred providers may seek penalties for late payment." Emerus Hosp., 2014 WL 4214260 at *3. Defendant now argues that notwithstanding this determination, the court should consider the issue again because "the Court has not addressed the impossibility of calculating penalties under Sections 843.342 and 1301.137 given the absence of any 'contracted rate' for any of the services at issue in this case."[8] According to defendant, because the "penalty calculations set forth in Sections 843.342 and 1301.137 are based on" a contracted rate, and plaintiffs, as out-of-network providers, do not have a contract with defendant, there is no way to calculate the statutory penalties. As a result, defendant contends that plaintiffs' second amended complaint should be dismissed.

As previously held, as non-preferred providers, plaintiffs may seek (and have sought) payment for health care claims submitted to defendant that were not paid in compliance with the TPPA. Emerus Hosp., 2014 WL 4214260 at *3. The amount of plaintiffs' recovery, including

---

[8] The court notes that in its motion to dismiss the original complaint, defendant did not raise the argument that it now poses – that the penalty provisions of the TPPA depend on a contracted rate – and that in light of the court's earlier ruling plaintiffs did not address the merits of this argument in their response. As discussed below, this argument may be revisited at a later stage in this litigation.

statutory penalties, is not relevant to whether plaintiffs have sufficiently stated a claim pursuant to Rule 12(b)(6). Accordingly, the court declines to revisit this issue at this time.

### 7. Identification of Individual Health Care Claims

Finally, defendant argues that the second amended complaint should be dismissed because it fails to identify the individual health care claims at issue. The court shares defendant's frustration at the glacial pace at which the health care claims at issue are (hopefully) being identified. As previously recognized by the court, Magistrate Judge Rowland is working diligently to help plaintiffs and their experts produce the claim information in a form that is acceptable to all parties. At this time, plaintiffs, pursuant to Judge Rowland's order (doc. 309), are merging the claims data gathered by their IT department and expert into a single spreadsheet for production to defendant. Plaintiffs have also been ordered to provide defendant with the scope of claims data that is still missing, which defendant has been ordered to then produce. The parties are reporting to Judge Rowland on the status of these assignments on March 25, 2016. Accordingly, dismissing the second amended complaint for failure to identify the claims information would be premature at this time.

Moreover, federal pleading standards require only that a complaint provide sufficient detail to give the defendant fair notice of what is claimed and the grounds on which the claim rests. Twombly, 550 U.S. at 555. As discussed above, the second amended complaint alleges that plaintiffs, who are out-of-network emergency care providers, submitted health care claims to defendant related to emergency care they provided to individuals insured by defendant. Plaintiffs allege that defendant, in violation of the TPPA, denied, underpaid, and paid late some of these submitted claims. Because these allegations plausibly suggest that plaintiff has a right

19

to relief, the second amended complaint sufficiently states a claim upon which relief can be granted.

## CONCLUSION

For the foregoing reasons, defendant's motion (doc. 224) to dismiss is granted in part and denied in part. Defendant's motion is granted with respect to the PA plaintiffs' (Tomball Emergency Physicians, PA, Town & Country Emergency Physicians, PA, and CR Emergency Physicians, PA) claims and is denied with respect to all other claims. Defendant is directed to file an answer to the second amended complaint on or before April 5, 2016. This matter is set for a report on status on April 7, 2016, at 9:00 a.m.

**ENTER:** **March 14, 2016**

_____
**Robert W. Gettleman**
**United States District Judge**