IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| EMERUS HOSPITAL, CR EMERGENCY ROOM, LLC, TOMBALL EXPRESS MEDICAL CENTER, LLC, SUGAR LAND 24 HOUR HOSPITAL, LLC, SAN FELIPE MEDICAL CENTER, LLC, CRAIG RANCH EMERGENCY HOSPITAL, LLC, TOMBALL EMERGENCY PHYSICIANS, PA, TOWN & COUNTRY EMERGENCY PHYSICIANS, PA, and CR EMERGENCY PHYSICIANS, PA, | ) ) ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) | No. 13 C 8906 |
| v. | ) ) | Judge Robert W. Gettleman |
| HEALTH CARE SERVICE CORPORATION, a Mutual Legal Reserve Company, and BLUE CROSS BLUE SHIELD OF TEXAS, a division of Health Care Service Corporation, a Mutual Legal Reserve Company, | ) ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs filed a second amended complaint against defendants Health Care Service Corporation ("HCSC") and Blue Cross Blue Shield of Texas ("BCBSTX"),[1] alleging that they violated the Texas Prompt Pay Act ("TPPA"), §§ 1301.101-1301.202, 843.001-843.464 of the Texas Insurance Code.[2] Defendant and plaintiffs have each moved for partial summary

---

[1] As previously noted by the court, Emerus Hosp. Partners, LLC v. Health Care Serv. Corp., 2014 WL 4214260, at *1 n.1 (N.D. Ill. Aug. 22, 2014), and uncontradicted by plaintiffs, BCBSTX is a division of HCSC, and therefore HCSC is the only defendant in this case.

[2] Chapter 843 of the Texas Insurance Code regulates Health Maintenance Organizations ("HMOs") and Chapter 1301 regulates Preferred Provider Organizations ("PPO"). The two chapters are collectively referred to as the TPPA.

judgment. For the reasons discussed below, defendant's motion is granted and plaintiffs' motion is denied.

## **BACKGROUND**[3]

Plaintiffs are health care providers and physicians that provide emergency care services.[4] Defendant is an insurer as defined under the TPPA.[5] Plaintiffs allege that from November 8, 2009, to the present, they have provided emergency care to patients insured by defendant. At all times relevant to the allegations, plaintiffs were out-of-network, or nonpreferred, providers with defendant.

Plaintiffs allege that during the relevant time period "Emerus Hospital was the 'd/b/a' under which each of the LLC entities conducted business and submitted bills or 'claims' to Defendants." According to plaintiffs, Emerus Hospital and the LLC plaintiffs were licensed health care providers with National Provider Identifier ("NPI") numbers through which health care claims were submitted to defendant for payment. From November 8, 2009, through the present, the PA plaintiffs employed licensed emergency care physicians to work as independent

---

[3] The facts are taken from the parties' Local Rule 56.1 statements and the court's review of the depositions and exhibits on file. Both parties have moved to strike either all or some of the other party's L.R. 56.1 statement for failure to comply with L.R. 56.1. The court is aware of its "broad discretion to require strict compliance with Local Rule 56.1." Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec, 529 F.3d 371, 382 n.2 (7th Cir. 2008). However, in its effort to decide the parties' motions for partial summary judgment on the merits, the court has reviewed all depositions and exhibits on file, making it unnecessary to strike any portion of either party's L.R. 56.1 statement.

[4] The court will refer collectively to plaintiffs CR Emergency Room, LLC, Tomball Express Medical Center, LLC, Sugar Land 24 Hour Hospital, LLC, San Felipe Medical Center, LLC, Craig Ranch Emergency Hospital, LLC, Tomball Emergency Physicians, PA, Town & Country Emergency Physicians, PA, and CR Emergency Physicians, PA as plaintiffs.

[5] Under the TPPA, an insurer is a company "authorized to issue, deliver, or issue for delivery in [the State of Texas] health insurance policies." Tex. Ins. Code Ann. § 1301.001(5).

contractors providing emergency care at the LLC entities. Plaintiffs allege that the physicians' services were billed to defendant through the NPI numbers of the PA entities or their own NPI numbers.

Plaintiffs complain that, in violation of the statutory provisions of the TPPA, defendant "improperly underpaid, late paid, or wholly failed to pay" clean claims[6] submitted for emergency care services provided to patients insured by defendant. As a result, plaintiffs allege that they suffered substantial damages. Plaintiffs seek to recover the full amount of the claims that defendant allegedly underpaid or denied, as well as penalties for late paid claims under the TPPA.

## DISCUSSION

**I.       Legal Standard**

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The movant bears the burden of establishing both elements, Becker v. Tenebaum-Hill Associates, Inc., 914 F.2d 107, 110 (7th Cir. 1990), and all reasonable inferences are drawn in the non-movant's favor. Fisher v. Transco Services - Milwaukee, Inc., 979 F.2d 1239, 1242 (7th Cir. 1992). If the movant satisfies its burden, then the non-movant must set forth specific facts showing there is a genuine issue for trial. Nitz v. Craig, 2013 WL 593851, at *2 (N.D. Ill. Feb. 12, 2013). In doing so, the non-movant cannot simply show some metaphysical doubt as to the material facts. Pignato v. Givaudan Flavors Corp., 2013 WL 995157, at *2 (N.D. Ill. March 13,

---

[6] A "clean claim" is a nonelectronic or electronic claim submitted by a physician, health care provider, or institutional provider to an insurer that complies with all the necessary elements as set forth in the TPPA, or otherwise agreed to by contract. Tex. Ins. Code Ann. § 1301.131.

2013) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)). Summary judgment is inappropriate when "the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

**II.     Analysis**

Sections 1301.103 and 843.338 of the Texas Insurance Code require an insurer that has received a clean claim to make a determination within a specified amount of time (45 days for non-electronic claims and 30 days for electronic claims) as to whether the claim is payable. Within the specified time frame, the insurer "must either (1) pay the claim, (2) partially pay and partially deny the claim and notify the provider in writing of the reason for partial denial or (3) deny the claim in full and notify the provider in writing of the reason for denial." Health Care Serv. Corp. v. Methodist Hosps. of Dallas, 814 F.3d 242, 245 (5th Cir. 2016). If an insurer fails to comply with these requirements, the statute, pursuant to §§ 1301.137 and 843.342, "imposes a range of penalties for late payments of claims determined to be payable." Id. Although the statute does not explicitly give out-of-network providers, like plaintiffs, the right to actual damages, this court previously found that pursuant to §§ 1301.069 and 843.351 "a non-preferred provider may . . . seek payment under the TPPA and [that] plaintiffs have adequately stated a claim for actual damages." Emerus Hosp., 2014 WL 4214260 at *3. The court also held that §§ 1301.069 and 843.351 permit "out of network emergency care providers to seek penalties and fees for delayed payment." Id.

Following that opinion, both parties moved for partial summary judgment. In its motion, defendant asks the court to narrow the types of claims that are subject to the TPPA and its

4

penalties. Plaintiffs' motion asks the court to hold that defendant has violated the TPPA through its claims processing system. The parties agree that damages can be determined once the court decides these issues. The court will address the parties' motions in turn.

A. **Defendant's Motion**

Defendant argues that it is entitled to partial summary judgment and asks the court to hold that: (1) the TPPA does not apply to defendant when it administers, rather than insures, self-funded BlueCard,[7] state government, and employer-sponsored plans; (2) the TPPA does not apply to Federal Employee Program, 5 U.S.C. § 8903(1), claims because it is preempted by the Federal Employee Health Benefits Act, 5 U.S.C. § 8901 et seq. ("FEHBA"); and (3) 1,261 claims are time-barred. Plaintiffs agree with defendant that the TPPA does not apply to self-funded state government claims or FEHBA claims, and that the 1,261 claims are time-barred. Accordingly, the court will address only defendant's remaining arguments.

As an initial matter, "[w]hen interpreting a Texas statute, we follow the same rules of construction that a Texas court would apply." Methodist, 814 F.3d at 248 (internal quotation omitted). Consequently, where the court finds it necessary to interpret the TPPA, it starts by looking to "the plain language" of the TPPA "to determine and give effect to the Legislature's intent." Id. Where the TPPA is unambiguous, the court will "apply its words according to their common meaning in a way that gives effect to every word, clause, and sentence," as Texas courts do. Id. Where terms are defined in the TPPA, "the court is bound to construe th[ose]

---

[7] The BlueCard program is a program through which members of a plan insured or administered by a Blue Cross Blue Shield-licensed entity can obtain medical services in another Blue Cross Blue Shield-licensed entity's area. If such a member obtains medical services in Texas, the provider submits the claim to BCBSTX, which is then reimbursed by the "home plan."

term[s] by [their] statutory definition only." Id. Finally, the court will consider each provision of the TPPA "in the context of the broader statute" to discern the meaning of each provision. Id.

However, the court need not interpret the TPPA to determine if it applies to self-funded BlueCard and employer-sponsored programs (both private and state government) because the question is not one of first impression. The Fifth Circuit has already decided it in the negative. See Methodist, 814 F.3d at 253[8] ("[The TPPA] is inapplicable to BCBSTX when it administers self-funded [employer-sponsored] plans, state government plans, and claims under the BlueCard program."). In arguing that the TPPA does apply to BlueCard and self-funded employer-sponsored plans, plaintiffs completely ignore this binding precedent and cite to the statute, rather than the case law interpreting it, to implicitly argue that the Fifth Circuit's Methodist holding is incorrect. Plaintiffs' argument is unpersuasive. The court sees no reason to re-interpret the TPPA in order to find, in direct conflict with the Fifth Circuit (which includes Texas), that it does apply to BlueCard and self-funded employer-sponsored programs.

Notably, the Fifth Circuit's analysis in Methodist stressed many of the same statutory construction principles that plaintiffs stress to this court. Applying those principles, the Fifth Circuit came to the opposite conclusion that plaintiffs urge upon the court. The Methodist Court began its analysis with the TPPA's "Applicability Section" found in Section 1301.0041(a). The Applicability Section reads as follows:

---

[8] The defendant in the instant case, BCBSTX, was the plaintiff in Methodist. In Methodist, BCBSTX sought, and was granted, declaratory judgment that the TPPA does not apply to it as an administrator of self-funded plans, state government plans, and BlueCard claims, and that the FEHBA preempts application of the TPPA to BCBSTX's administration of claims under the Federal Employees Health Benefits Program.

6

> Except as otherwise specifically provided by this chapter, this chapter applies to each preferred provider benefit plan in which an insurer provides, through the insurer's health insurance policy, for the payment of a level of coverage that is different depending on whether an insured uses a preferred provider or a nonpreferred provider.

The Fifth Circuit rejected Methodist's argument that the Applicability Section "is broad enough to encompass the actions of an administrator that merely facilitates payment and does not have the financial burden of payment." Methodist, 814 F.3d at 249. Importantly, the court read the Applicability Section in conjunction with Section 1301.109 of the TPPA ("Applicability to Entities Contracting with Insurer"), as plaintiffs urge this court to do. That Section reads as follows:

> This subchapter applies to a person [ ] with whom an insurer contracts to:
> (1) process or pay claims;
> (2) obtain the services of physicians and health care providers to provide health care services to insureds; or
> (3) issue verifications or preauthorizations

Reading the Sections together, the Fifth Circuit found persuasive the fact that the Applicability Section refers to a "benefit plan" for which the insurer "provides . . . for . . . payment" while Section 1301.109 does not use this language when referring to payments made by administrators, "but instead describes those acts of administrators with the words, process or pay claims." Id. (internal quotation omitted). The court reasoned that "[t]his suggests that [the Applicability Section]'s 'provides . . . for . . . payment' language does not encompass payments by others that are merely distributed by an administrator." Id. "Simply put, BCBSTX, as an administrator, does not confer any benefits for medical expenses on beneficiaries and therefore does not provide for payment through its 'health insurance policy.'" Id. at 250. Accordingly, the

7

court held that the Applicability Section, and therefore the TPPA, did not apply where BCBSTX only administered the plans. Id. at 251.

The Fifth Circuit then turned to the issue of whether the TPPA applied to BCBSTX under Section 1301.109, as plaintiffs now argue that it does. The court reasoned that, "for section 1301.109 to apply, the self-funded plans, state government plans, and out-of-state BlueCard plans must operate as 'insurers' under Chapter 1301." Id. According to the Fifth Circuit, those plans were not insurers because they were neither listed in the TPPA's enumerated provisions, nor were "they authorized to issue, deliver, or issue for delivery health insurance policies in Texas." Id. (citing Tex. Dept of Ins. v. Am. Nat. Ins. Co., 410 S.W.3d 843, 849 (Tex. 2012) ("[S]elf-funded employee health-benefit plans . . . are not regulated like insurance companies."). Based on its own plain reading of the TPPA, the Fifth Circuit concluded that "Chapter 1301 is inapplicable to BCBSTX when it administers self-funded plans, state government plans, and claims under the BlueCard program." Id. at 253. This court sees no reason to disagree.

In addition to the arguments the Methodist Court rejected, plaintiffs argue that the TPPA applies to defendant by virtue of Section 1301.056 ("Restrictions on Payment and Reimbursement"). Section 1301.56 reads as follows:

> (a) An insurer or third-party administrator may not reimburse a physician or other practitioner, institutional provider, or organization of physicians and health care providers on a discounted fee basis for covered services that are provided to an insured unless . . . .

According to plaintiffs, because Section 1301.056 applies to both insurers and administrators, all of Chapter 1301 applies to defendant regardless of whether it is acting as an insurer or administrator. Plaintiffs cite no legal authority to support this sweeping view, and the court sees no reason to adopt it for several reasons. First, plaintiffs' position flies in the face of

the Methodist Court's holding without offering any explanation as to why the court should deviate from Fifth Circuit precedent. Second, as defendant points out, Section 1301.056 has nothing to do with prompt payments to out-of-network providers and, if applied as plaintiffs urge, renders several other sections of the Texas Insurance Code meaningless. Finally, as defendant also points out, even if plaintiffs are correct that Section 1301.056 applies to defendant and defendant violated it, Section 1301.056 allows only for administrative remedies, not a private right of action.[9]

Ultimately, plaintiffs' reading of the TPPA does not result in "statutory harmonization," as plaintiffs claim, but instead produces unnecessarily complicated discord that favors plaintiffs' position. The court sees no reason to adopt plaintiffs' preferred reading over, and in direct contrast to, the Fifth Circuit's. Accordingly, defendant's motion for partial summary judgment is granted.[10]

### B. Plaintiffs' Motion

Plaintiffs argue that they are entitled to partial summary judgment and ask the court to hold that: (1) defendant violated the TPPA by failing to promptly pay and dispute plaintiffs' claims within the time period required by the statute; (2) defendant has waived its ability to

---

[9] Section 1301.056 states that violations are "in violation of Subchapter A, Chapter 542" and are "subject to administrative penalties under Chapters 82 and 84 [of the Texas Insurance Code]." Chapter 542 authorizes only the Texas Department of Insurance to investigate, hold hearings, issue cease and desist orders, or bring enforcement actions. See Tex. Ins. Code §§ 542.008–542.010. Chapters 82 and 84 authorize only the Department to impose sanctions and administrative penalties on regulated entities. See Tex. Ins. Code §§ 82.051, 84.002.

[10] Defendant also argues that Section 1144(a) of ERISA preempts application of the TPPA to claims arising from self-funded ERISA plans. Because the court finds that the TPPA does not apply to defendant when it administers self-funded plans, state government plans, and claims under the BlueCard program, it need not address this argument.

9

dispute plaintiffs' unpaid or underpaid claims because defendant failed to do so within the TPPA's deadline; and (3) defendant is liable to plaintiffs for penalties and interest under the TPPA. To the extent that plaintiffs argue that defendants are obligated to comply with the TPPA's statutory deadline when plaintiffs submit clean claims that are covered by the TPPA, the court agrees. To the extent that plaintiffs ask the court to find that defendant has violated the TPPA and continues to do so through its claims processing system, the court declines to do so. The court will address plaintiffs' specific requests in turn.

Plaintiffs first ask the court to hold that defendant violated the TPPA by failing to promptly pay and dispute plaintiffs' claims within the time frame required by the statute. As defendant points out, however, the court lacks information sufficient to find that any, much less all, of plaintiffs' claims meet the TPPA's requirements. Most notably, defendant's obligations under the TPPA are predicated on plaintiffs submitting *clean* claims. See §§ 1301.103 and 843.338. Indeed, both Section 1301.103 and 853.338 of the TPPA are titled "Deadline for Action on Clean Claims." See id. Yet plaintiffs provide no evidence to the court that any of the claims they submitted to defendant were clean and therefore triggered the 30 or 45 day deadline to determine whether the claim was payable and either pay or dispute the claim. See id.

Instead of endeavoring to show that the claims plaintiffs submitted to defendant were in fact clean and otherwise covered by the TPPA, plaintiffs attack defendant's claims processing program, BlueCHiP, for failing to identify and, where necessary, dispute a claim's cleanliness. According to plaintiffs, this failure violates the TPPA. Plaintiffs' argument misses the point. The TPPA *presumes a clean claim*, as do the obligations that go with it. Plaintiffs cite no authority, and the court knows of none, that obligates defendant to determine whether a claim is

10

clean and notify plaintiffs if it is not. A plain reading of the TPPA suggests that it is incumbent upon plaintiffs to ensure that the claims they submit are clean. See id. Accordingly, plaintiffs' argument that BlueCHiP violates the TPPA for not timely notifying plaintiffs regarding the cleanliness of their claims fails.

Plaintiffs attempt to support their faulty argument by pointing to the deposition testimony of defendant's representative, Marcy Sasser. In explaining how BlueCHiP adjudicates claims, Sasser testified that when claims are submitted, whether clean or unclean, BlueCHiP processes them and sends the provider a provider claim summary. See Plaintiffs' Index of Exhibits, Ex. 1. The provider claim summary informs the provider that the claim has been processed and either paid or denied or partially paid (and why), or alerts the provider that the claim is lacking information necessary to process it.[11] Id. This is precisely what the TPPA demands, when the claim submitted is clean. See Methodist, 814 F.3d at 245. Sasser further testified that defendant's policy is to "pay claims timely, period" and that defendant does not review claims for cleanliness, ultimately processing and paying claims whether clean or dirty, because such a review "would hold up payment to providers." Plaintiffs' Index of Exhibits, Ex. 1 at 64–65. Taken in its proper context, then, Sasser's testimony that the provider claim summary is not an attempt to comply with the TPPA is not nearly as damning as plaintiffs would have the court believe.[12]

---

[11] According to Sasser, a provider's receipt of the provider claim summary "should be pretty immediate." Plaintiff's Index of Exhibits, Ex. 1 at 90.

[12] Defendant has submitted, and plaintiffs have asked the court to strike, an errata sheet that professes to "clarify" Sasser's testimony. Having read the entirety of Sasser's deposition and finding that it needs no clarification, the court has not relied on the errata sheet and will not

continue...

Sasser additionally testified that defendant employs a "prompt pay unit" that is tasked with performing audits to ensure that defendant's system is in compliance with the TPPA. Id. at 114. Sasser also testified that, after a claim is processed as described above, defendant utilizes a "scrubbing" process for claims that are prompt pay eligible, but not paid within the TPPA's mandated time frame. Id. at 120–22. The scrubbing process is the point at which defendant determines whether the submitted claim was clean and, ultimately, endeavors to comply with the TPPA. Id. Taken in full, Sasser's testimony establishes, at the very least, that an issue of material fact exists as to whether defendant's claim processing system complies with the TPPA. Accordingly, the court cannot hold that BlueCHiP violates the TPPA, nor can it hold, without additional evidence, that defendant has in fact violated the TPPA.

All of this is not to say that defendant complies with the TPPA one-hundred-percent of the time. In fact, defendant makes no such claim and acknowledges that it violates the TPPA and is liable for penalties when prompt pay eligible claims are not paid within the mandated time frame.[13] Accordingly, defendant concedes plaintiffs' third claim and the court need not decide it.

As for plaintiffs' remaining claim, that defendant has waived its ability to dispute plaintiffs' unpaid or underpaid claims because defendant failed to do so within the TPPA's mandated time frame, the court cannot grant plaintiffs' motion for the same reasons that it cannot grant plaintiffs relief on their first claim. Plaintiffs fail to provide even a mere scintilla of evidence that the claims they submitted to defendant were clean, or, for that matter, submitted

---

[12]...continue
address this issue.

[13] According to defendant, it processes and pays 98.1% of submitted claims within 30 days. See Defendant's Statement of Additional Facts, Ex. D.

under plans to which the TPPA applies, and were therefore covered by the TPPA. Consequently, summary judgment is not appropriate.

To the extent that plaintiffs ask the court to hold that defendant is obligated to comply with the TPPA, defendant does not dispute and the court so holds. The court cannot, however, on the evidence presented by the parties, hold that defendant has in fact violated the TPPA in any way. Accordingly, plaintiffs' partial motion for summary judgment is denied.

## CONCLUSION

For the foregoing reasons, defendant's motion for partial summary judgment (doc. 356) is granted and plaintiffs' motion for partial summary judgment (doc. 354) is denied.

**ENTER:** **March 23, 2017**

_____
**Robert W. Gettleman**
**United States District Judge**