IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| EMERUS HOSPITAL, CR EMERGENCY ROOM, LLC, TOMBALL EXPRESS MEDICAL CENTER, LLC, SUGAR LAND 24 HOUR HOSPITAL, LLC, SAN FELIPE MEDICAL CENTER, LLC, CRAIG RANCH EMERGENCY HOSPITAL, LLC, TOMBALL EMERGENCY PHYSICIANS, PA, TOWN & COUNTRY EMERGENCY PHYSICIANS, PA, and CR EMERGENCY PHYSICIANS, PA, <br><br> Plaintiffs, <br> v. <br><br> HEALTH CARE SERVICE CORPORATION, a Mutual Legal Reserve Company, and BLUE CROSS BLUE SHIELD OF TEXAS, a division of Health Care Service Corporation, a Mutual Legal Reserve Company, <br><br> Defendants. | No. 13 C 8906 <br><br> Judge Robert W. Gettleman |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Emerus Hospital, CR Emergency Room, LLC, Tomball Express Medical Center, LLC, Sugar Land 24 Hour Hospital, LLC, San Felipe Medical Center, LLC, Craig Ranch Emergency Hospital, LLC, Tomball Emergency Physicians, PA, Town & Country Emergency Physicians, PA, and CR Emergency Physicians, PA have brought a second amended complaint against defendants Health Care Service Corporation ("HCSC") and Blue Cross Blue Shield of Texas ("BCBSTX")[1] alleging that defendant violated the Texas Prompt Pay Act ("TPPA"), §§ 1301.101, 1301.202, 843.001-843.464 of the Texas Insurance Code. On March 23, 2017, the

---

[1] As previously noted by the court, Emerus Hosp. Partners, LLC v. Health Care Serv. Corp., 2014 WL 4214260, at *1 n.1 (N.D. Ill. Aug. 22, 2014) and uncontested by plaintiffs, BCBSTX is a division of HCHS, and therefore, HCSC is the only defendant.

court granted defendant's motion for partial summary judgment and denied plaintiffs' motion for partial summary judgment. Emerus Hosp. v. Health Care Serv. Corp, 247 F.Supp.3d 944 (N.D. Ill. 2017). The parties then engaged in a lengthy and contentious discovery process administered by then Magistrate Judge Rowland. After that process was complete, defendant filed a second motion for summary judgment [Doc. 519]. Plaintiffs countered with their own second motion for summary judgment [Doc. 530]. While those motions were being briefed, plaintiff filed a motion seeking reconsideration of the court's decision denying plaintiffs' motion to remand [Doc. 569] the case back to the Circuit Court of Cook County, Illinois, from which it had been removed on Dec. 13, 2013. All three motions, along with several motions to strike declarations and expert reports submitted in support of the summary judgment motions, are fully briefed and ready for resolution. For the reasons described below, plaintiffs' motions to remand and for summary judgment are denied. Defendant's motion for summary judgment is granted.

## BACKGROUND

Plaintiffs are health care providers and physicians that provide emergency care services. Defendant is an insurer as defined under the TPPA. Plaintiffs allege that from November 8, 2009, to the present, they have provided emergency care to patients insured by defendant. At all times relevant to the allegations, plaintiffs were out-of-network, or nonpreferred, providers with defendant.

Plaintiffs allege that during the relevant time period "Emerus Hospital was the 'd/b/a' under which each of the LLC entities conducted business and submitted bills or 'claims' to Defendants." According to plaintiffs, Emerus Hospital and the LLC plaintiffs were licensed health care providers with National Provider Identifier ("NPI") numbers through which health

care claims were submitted to defendant for payment. From November 8, 2009, through the present, the Professional Association ("PA") plaintiffs employed licensed emergency care physicians to work as independent contractors providing emergency care at the LLC entities. Plaintiffs allege that the physicians' services were billed to defendant through the NPI numbers of the PA entities or their own NPI numbers.[2]

Plaintiffs complain that, in violation of the statutory provisions of the TPPA, defendant "improperly underpaid, late paid, or wholly failed to pay" clean claims submitted for emergency care services provided to patients insured by defendant. As a result, plaintiffs allege that they suffered substantial damages. Plaintiffs seek to recover the full amount of the claims that defendant allegedly underpaid or denied, as well as penalties for late paid claims under the TPPA.

## DISCUSSION

**I.  Remand**

As noted, the case was originally filed in state court. Defendant removed the case to this court on the basis that the Employee Retirement Income Security Act ("ERISA") completely preempted certain of plaintiffs' claims, giving the court federal question jurisdiction. Plaintiffs moved to remand, arguing that they had executed irrevocable waivers of assignment of ERISA benefits prior to commencing the lawsuit. The court denied that motion, applying the 2 part test established in <u>Aetna Health Inc. v. Davila</u>, 542 U.S. 200, 201 (2004), for determining whether ERISA completely pre-empts a state law cause of action: "if an individual, at some point in time could have brought his claim under ERISA §502(a)(1)(B) and" where no other independent

---

[2] The PA plaintiffs' TPPA claims were previously dismissed. <u>Emerus Hosp. v, Health Care Ser. Corp.</u>, 2016 WL 946916 at * 4 (N.D. Ill. March 4, 2016).
3

legal duty is implicated by a defendant's action, the individual's cause of action is completely pre-empted by ERISA §502(a)(1)(B). Davila, 542 U.S. at 201.

Plaintiffs argued that they could not have brought their claims under ERISA because of the written waivers. The court rejected this argument, concluding that "prior to the execution of the written waivers, from November 2009, to June 2013," plaintiffs held themselves "out to be [the] assignee[s] of the beneficiaries, submitting requests for payment directly to [defendant]. Consequently, during this time, [plaintiffs] could have brought [their] claim[s] under ERISA §502(a)(1)(B)." Emerus Hosp. Partners v. Health Care Serv. Corp., 41 F.Supp.3d 695, 699 (N.D. Ill. 2014). Thus, the court concluded that plaintiff had derivative standing under ERISA. Id. at 700.

In their current motion, plaintiffs argue that defendant is now taking the position in its summary judgment motion that the patient assignments, the validity of which formed the basis of the court's earlier opinion, are invalid by virtue of the irrevocable waivers executed before the lawsuit was filed. According to plaintiffs, this means that the court does not have subject matter jurisdiction.

Plaintiffs misconstrue both defendant's current position as well as the court's earlier opinion. Plaintiffs had derivative standing to bring ERISA claims from 2009 to 2013. As a result, the court concluded that the waivers were an attempt to artfully plead the complaint by disguising the federal claims. Id. The court never held that the waivers were invalid. Because the waivers are valid, plaintiffs cannot now plead a claim under ERISA, which is what defendant has argued in its motion for summary judgment. And, as defendant notes, the availability of a federal remedy is not a prerequisite for federal preemption, and the inability to bring a claim

under ERISA after removal is not unusual. See Lister v. Stark, 890 F.2d 941, 946 (7th Cir. 1989). Defendant has never argued, and the court never found, that the waivers were invalid. Consequently, plaintiffs' motion to reconsider remand [Doc. 567] is denied.

## II. Motions for Summary Judgment

### A. Legal Standard

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The movant bears the burden of establishing both elements, Becker v. Tenebaum-Hill Associates, Inc., 914 F.2d 107, 110 (7th Cir. 1990), and all reasonable inferences are drawn in the non-movant's favor. Fisher v. Transco Services - Milwaukee, Inc., 979 F.2d 1239, 1242 (7th Cir. 1992). If the movant satisfies its burden, then the non-movant must set forth specific facts showing there is a genuine issue for trial. Nitz v. Craig, 2013 WL 593851, at *2 (N.D. Ill. Feb. 12, 2013). In doing so, the non-movant cannot simply show some metaphysical doubt as to the material facts. Pignato v. Givaudan Flavors Corp., 2013 WL 995157, at *2 (N.D. Ill. March 13, 2013) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)). Summary judgment is inappropriate when "the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

### B. Defendant's Motion

Defendant raises three basic arguments to support its motion for summary judgment. First it argues that the TPPA does not provide penalties to out-of-work providers because they do not have a "contracted rate." Second, defendant argues that ERISA either completely or

5

expressly preempts any of plaintiffs' TPPA claims that relate to benefits provided to members of fully insured ERISA Benefit Plans.  Finally, defendant argues that plaintiffs have presented no evidence to establish liability under the TPPA for any claims submitted, including claims not preempted.  The court will address each argument in turn.

1. **Penalties**

Sections 1301 and 843 of the TPPA[3] require an insurer that has received a clean claim to make a determination within a specified amount of time as to whether the claim is payable.  Within that time the insurer "must either (1) pay the claim, (2) partially pay and partially deny the claim and notify the provider in writing of the reason for partial denial, or (3) deny the claim in full and notify the provider in writing of the reason for denial."  Health Care Serv. Corp. v. Methodist Hops. of Dallas, 814 F.3d 242, 245 (5th Cir. 2016).  If an insurer fails to comply with these requirements, sections 1301.137 and 843.342 impose "a range of penalties for late payments of claims determined to be payable."  Id.  The statute does not explicitly give out-of-network providers, like plaintiffs, the right to actual damages or penalties, but in ruling on defendant's motion to dismiss the original complaint, this court held that under §§ 1301.069 and 843.351 "a non-preferred provider may … seek payment under the TPPA," and "out-of-network emergency care providers [may] seek penalties and fees for delayed payment."  Emerus Hosp., 2014 WL 4214260 at *3.

After plaintiffs filed their second amended complaint, defendant again moved to dismiss, raising a number of grounds, including that out-of-network providers cannot seek penalties under the TPPA.  Despite the court's earlier decision, defendant argued that the court had not addressed

---

[3] Chapter 843 of the Texas Ins. Code regulates Health Maintenance Organizations ("HMOs") and Chapter 1301 regulates Preferred Provider Organizations ("PPOs").  The two chapters are collectively referred to as the TPPA.

6

the impossibility of calculating penalties under §§843.342 and 1301.137, because those sections calculate the penalties based on the difference between the billed charges as submitted on the claim, and the "contracted rate." Because out-of-network providers do not have a "contracted rate" there is no way to calculate the statutory penalties.

In ruling on the motion, the court declined to reach the specific issue, stating that it had previously held that plaintiffs may seek payment for health care claims submitted to defendant that were not paid in compliance with the TPPA, and that the amount of plaintiffs' recovery, including statutory penalties, is not relevant to whether plaintiffs have sufficiently stated a claim. Thus, the court declined to revisit the issue of the availability of penalties at that time. Emerus Hosp., 2016 WL 946916 at *8. The court noted, however, that defendant had not raised this specific argument in its original motion and thus "this argument may be revisited at a later stage in this litigation." Id., n.8.

Defendant argues that the time has come to address this issue, and the court agrees. Since the court last looked at the issue, the Texas Attorney General, at the request of the Texas Legislature, has issued an opinion on the subject, specifically concluding that (Texas Atty Gen. Op. 5/22/19):

> A court would likely conclude that the deadline provisions of Sections 843.338 and 1301.103 of The Insurance Code relate to prompt payment and, therefore, apply to claims filed by out-of-network emergency care providers pursuant to Section 843.351 or 1301.069 of that Code. However, a court would likely conclude that the penalty provisions in Sections 843.342 and 1301.137 do not apply to claims filed by out-of-network emergency care providers pursuant to Sections 843.351 or 1301.069.

The basis for the Attorney General's opinion is that the "penalty structure depends, for its calculation, on the 'contractual right' of reimbursement to the provider on the claim." Because

7

"out-of-network providers do not have a contracted rate, … penalties cannot be calculated for them." Id. at 4.  The Attorney General noted that the legislature could have specified the manner for calculating a penalty for non-network providers who do not have a contracted rate, but failed to do so, leaving impossible a penalty calculation for such providers.

Plaintiffs correctly note that the Attorney General opinion is not binding on this court, and the parties dispute the amount of deference to which it is entitled.  Defendant argues that where, as here, the legislature requests an attorney general opinion, the "usual deference paid to formal opinions of state attorney generals is accentuated," Kneeland v Nat'l Collegiate Athletic Ass'n, 850 F.2d 224, 228 (5th Cir. 1988), and that Texas courts generally accord great weight to such opinions. See Plainview Indep. Sch. Dist. v. Edmonson Wheat Growers, Inc., 681 S.W.2d 299, 302 (Tex. App. 1984).

The amount of deference to be accorded is largely irrelevant.  The question is whether the analysis presented is correct, and the court concludes that it is correct. Under the plain wording of the statute, there is simply no method to calculate the penalty to be paid to out-of-network providers, and plaintiffs have suggested none. Section 1301.137 provides, for example, that if the insurer fails to pay on time, it "shall pay the preferred provider making the claim the contracted rate owed on the claim plus a penalty in the amount of … 50 percent of the difference between the billed charges as submitted on the claim and the contracted rate …." Plaintiffs argue that the purpose of the section is to ensure that providers are paid what they are "owed" and for out-of-network providers that equals the amount billed. But if that is correct (and it is not), the penalty would always be zero because it would be calculated as 50 percent of the difference between

billed charges and the billed charges (what the provider should have been paid). This is an absurd construction and is rejected.

Consequently, the court concludes that penalties under the TPPA are not available to out-of-network providers.

### 2. ERISA Preemption

Defendant argues that of the 8,577 benefit claims that remain at issue, for 5,474 of those benefit claims the benefit plan at issue is an employer-sponsored health benefits plan governed by ERISA. Defendant argues that under the court's previous opinions those claims are completely preempted and, if not, they are expressly preempted.

Plaintiffs do not dispute that the 5,474 benefit claims relate to ERISA benefit plans, but argue that there are no more ERISA claims left because all claims where defendant "acted as an administrator for a self-funded, employer sponsored ERISA health plan were dismissed pursuant to the court's prior summary judgment ruling."

Plaintiffs are incorrect. In its first motion for summary judgment, defendant sought a ruling that the TPPA does not apply to defendant when it administers, rather than insures, self-funded BlueCard, state government, and employer-sponsored plans. That precise issue had already been decided by the Fifth Circuit in Health Care Serv. Corp. v. Methodist Hosps. of Dallas, 814 F.3d 242, 253 (5th Cir. 2016), which held that the TPPA "is inapplicable to [defendant] when it administers self-funded [employer-sponsored] plans, state government plans, and claims under the BlueCard program." The Fifth Circuit reached this conclusion because, id at 248:

> We are convinced that [defendant] neither provides for coverage through its "health insurance policy" when it administers the plans at issue here, nor is a "person" with

9

whom an "insured" contracts to perform administration services. We therefore hold that Chapter 1301 is not applicable to [defendant's] activities as administrator of the self-funded plans or state government plans, nor to those activities it performs as administrator of claims under the BlueCard program.

In granting defendant's request for partial summary judgment, this court relied on Methodist Hospitals. Emerus Hosp. v. Health Care Serv. Corp., 247 F.Supp.3d 944, 950 (N.D. Ill. 2017). In so doing, the court expressly noted that it need not reach defendant's argument that ERISA preempts application of the TPPA to claims arising from self-funded ERISA plans. Id., n.10.

Defendant now seeks summary judgment based on preemption as to the remaining benefit claims that are related to employer-sponsored benefit plans insured (as opposed to administered) by defendant. Defendant has presented evidence that 5,474 such benefit claims remain. Plaintiffs have failed to rebut this evidence.

Defendant first argues that these 5,474 benefit claims are completely preempted based on the court's prior ruling denying plaintiff's motion to remand. See Emerus Hosp. Partners, 41 F.Supp.3d at 700. The court agrees.

In Lone Star OB/GYN Assocs. v. Aetna Health Inc., 579 F.3d 525, 530 (5th Cir. 2009), the Fifth Circuit held that "[a] claim that implicates the rate of payment set out in the Provider Agreement, rather than the right to payment under the terms of the benefit plan … is not preempted by ERISA." That reasoning was based on the conclusion that the contract between the provider and the insurer created an "independent legal duty" distinct from the rights of the provider's patients under the ERISA plans. Id. at 530-31.

In the instant case, plaintiffs, as out-of-network providers have no contract with defendant. Without a Provider Agreement, there is no independent legal duty distinct from the

patient's rights under the ERISA plans. Thus, whether plaintiffs are entitled to payment, and when and at what rate depends entirely on the benefits described in each patient's ERISA plan. See, e.g., North Cypress Medical Center Operating Co., Ltd. v. Cigna Healthcare, 781 F.3d 182, 201 (5th Cir. 2015). Consequently, the court concludes that the fully insured 5,474 ERISA benefit claims are completely preempted. Thus, any claim for payment must be made under ERISA. And, because plaintiffs have waived their assignment of the rights to proceed under ERISA, defendant is granted summary judgment on those benefit claims.[4]

### 3. Plaintiffs' Lack of Evidence

Finally, defendant argues that regardless of whether penalties are available and the 5,474 benefit claims are preempted, plaintiffs have failed to produce any evidence to establish defendant's liability under the TPPA. Once again, the court agrees.

To establish defendant's liability under the TPPA, plaintiffs must submit evidence that they submitted "clean claims" for emergency care to defendant, that the claims were "payable," and that defendant failed either to pay the claim, potentially pay within a specified time frame and partially deny the claim and notify the provider in writing of the reason for the partial denial, or deny the claim in full and provide the provider in writing of the reason for the denial. Methodist Hosps. of Dallas, 814 F.3d at 245. In its motion for summary judgment, defendant challenges plaintiffs to identify even a single claim that meets these requirements. In particular, defendant argues that plaintiffs have no evidence to establish (or raise a question of fact) that any

---

[4] Even if the claims are not completely preempted, the court agrees with defendant that the claims are expressly preempted. See, Houston Methodist Hosp. v. Humana Ins. Co., 266 F.Supp.3d 939, 952-61 (S.D.Tex. 2017); Houston Home Dialysis, LP v. Blue Cross and Blue Shield of Texas, 2018 WL 2562692, *9 (S.D.Tex. June 4, 2018).

11

of the identified benefit claims at issue were: 1) "clean"; 2) for emergency services; 3) payable; and/or late or underpaid.

In support of its motion for summary judgment, defendant filed a Statement of Undisputed Facts in compliance with L.R. 56.1(a)(3). Under the rule, plaintiffs were required to file a response to each numbered paragraph in defendant's statement, including, "in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon. L.R. 56.1(b)(3)(B). And, "[a]ll material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party." L.R. 56.1(b)(3)(C).

Plaintiffs' L.R. 56.1(b)(3)(B) response completely fails to comply with the rule. As defendant argues, the response consists largely of general denials, and even when a particular response contains a more specific denial, it fails to include a specific citation to record evidence. Some of the responses do indicate that the statement is controverted by a thirteen page, single-spaced, declaration of plaintiffs' CEO and former Vice President of Finance, Dr. Kirby, but do not indicate a page or paragraph number of that declaration. Most of the responses are not even that detailed. For example, plaintiffs' responses to defendant's statements 24-32 and 34-37 are: "Plaintiffs object to and dispute Defendants' USOF No [26] because it misstates the evidence." Indeed, there is not a single specific citation to any record evidence anywhere in plaintiffs' response.[5]

Plaintiffs' utter failure to comply with the rule justifies striking their response and deeming all of defendant's statement admitted. "An answer that does not deny the allegations in

---

[5] Some of the responses do indicate that the statement is controverted by the spreadsheet attached to Dr. Kirby's declaration. That spreadsheet is 56 pages. The response fails to indicate where in the spreadsheet that the statement is controverted.

the numbered paragraph with citations to supporting evidence in the record constitutes an admission." McGuire v. United Parcel Service, 152 F.3d 673, 675 (7th Cir. 1998). Once all of defendant's statement are admitted, plaintiffs have no evidence to fend off summary judgment. Nevertheless, the court will briefly address plaintiffs' argument.

As noted, defendant has challenged plaintiffs to identify specific claims that they can establish were clean, payable, and not properly and timely responded to by defendant. Rather than take on this challenge directly, plaintiffs rely on Dr. Kirby's declaration to establish that all of the claims listed on the attached spreadsheet were clean, payable and not timely paid or were underpaid. Dr Kirby's declaration, however, is replete with hearsay, contains statements of which he has no personal knowledge and, for the most part is inadmissible. For example, Dr. Kirby is unqualified to state that the claims are clean, or that the rate charged is "consistent with the usual and customary rate charged for such emergency care service providers like plaintiffs. Nor, as CEO and former Vice President of Finance, is he even competent to state that the services rendered for each claim constitute emergency care services. Indeed, the only portion of Dr. Kirby's declaration that is admissible is his description of plaintiffs' customs and practices. That description, however, lends no support to plaintiffs' effort to defeat summary judgment, or to support its own motion.

Without Dr. Kirby's inadmissible evidence, plaintiffs are left with arguing that defendant's claim processing system "does not adjudicate claims according to the parameters set forth in the [TPPA] …" This argument mirrors plaintiffs' argument in their own motion for summary judgment, and is just a rehash of their first motion for summary judgment. The court

rejected plaintiffs' argument then, and does so again. Emerus Hosp. v. Health Care Serv. Corp., 247 F.Supp.3d at 951-52.

According to plaintiffs, defendant's system (BlueChip) sent out-of-network providers a timely "Provider Claims Summary." Plaintiffs characterize this document as notifying the provider that the claim has been processed, but is not meant to comply with the TPPA. Whether intended to or not, the court has already held that the information provided in the Provider Claims Summary provides precisely what the TPPA demands for clean claims. Id. at 551.

Plaintiffs have not presented any new evidence to alter the court's initial ruling. Indeed, the only "new" evidence submitted is Dr. Kirby's declaration, which lends no admissible support, and the report/testimony of plaintiffs' expert Sara Waitt. Defendant has moved to strike her testimony as improper under Fed. R. Evid.702. The court agrees. Ms. Waitt's "opinion" essentially offers legal conclusions as to what the TPPA requires, opines on the ultimate issue in the case, and admits that her opinion is based not on the wording of the statute, but on her own views on how the TPPA should work. Nor is she qualified to render an opinion on defendant's "intent" in sending out the Provider Claims Summary. In short, Ms. Waitt's testimony is inadmissible and, in any event, fails to provide any information or evidence relevant to defendant's motion.

As a result, plaintiffs have failed to demonstrate that there is a dispute as to any material fact that would justify denial of defendant's motion for summary judgment. Consequently, the

court grants defendant's motion for summary judgment [Doc. 519] and denies plaintiffs' motion for summary judgment [Doc. 532].[6]

## **CONCLUSION**

For the reasons described above, plaintiffs' motions for reconsideration [Doc. 567] and for summary judgment [Doc. 532] are denied. Defendant's motion for summary judgment [Doc. 519] is granted.

**ENTER: April 6, 2020.**

                                          **Robert W. Gettleman**
                                          **United States District Judge**

---

[6] The court denies plaintiffs' motions to strike and objections to the testimony by Cathy Roach (Doc. 536) and Mary F. Keller (Doc. 539) as moot. The court did not rely on their testimony in reaching its conclusions in this opinion.